IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD DONOVAN WILLIAMS | : | CIVIL ACTION |
| | : | No. 12-5395 |
| v. | : | |
| | : | |
| BOROUGH OF SHARON HILL, et al. | : | |

O'NEILL, J.                                                    September 4, 2013

## MEMORANDUM

Now before me is a motion to dismiss by defendants Borough of Sharon Hill and Sean

William Johnson (Dkt. No. 6) and plaintiff Howard Donovan Williams's response thereto.  (Dkt.

No. 8.)  For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

Plaintiff's complaint alleges the following facts.  His wife, Chanane Williams, was

involved in a child custody dispute with her ex-spouse, Elliott Brown, III.  Compl. ¶¶ 7-9.  At

approximately 6:18 p.m. on July 18, 2011, defendant Alastair Crosbie,[1] who had been retained

by Brown's attorney, appeared with Elliott Brown III and Chanane Williams' son Elliott at

plaintiff's home at 90 Kenny Avenue, Sharon Hill, Pennsylvania, to serve a subpoena for a

deposition in the child custody matter.  Id. at ¶¶ 10, 14-16.  The subpoena was directed to

Clarence Williams, not Howard Donovan Williams.  Id. at ¶ 11.  Plaintiff alleges that "there were

no lawful grounds to believe that 'Clarence Williams' was the same person as Plaintiff, Howard

Donovan Williams, or that 'Clarence Williams' would be found at Plaintiff's residence" on the

evening in question.  Id. at ¶ 13.

Defendant Officer Sean William Johnson, of the Borough of Sharon Hill Police

Department was parked outside of plaintiff's house when Crosbie appeared with the subpoena.

---

[1]          Crosbie filed an answer to the complaint on August 14, 2013.

Id. at ¶ 18.  Plaintiff alleges that Crosbie enlisted the assistance of the Borough of Sharon Hill Police Department in serving the subpoena and that Crosbie had represented to the police that the subpoenaed individual, Clarence Williams, "was a dangerous drug dealer."  Id. at ¶ 12.  When plaintiff answered the door, he alleges that Crosbie shouted to Officer Johnson that plaintiff was Clarence Williams.  Id. at ¶ 18.  Plaintiff alleges that Johnson then "approached Plaintiff and directed Plaintiff to step outside on his porch and provide to him Plaintiff's name and identification."  Id. at ¶ 19.  Plaintiff indicated that his identification was inside his house and told Johnson that his name was Howard Donovan Williams.  Id. at ¶ 20.  He alleges that Johnson did not allow him to go inside to get his identification and that instead Johnson "detained Plaintiff on his front porch, placed him in handcuffs in full view of his neighbors, and placed Plaintiff in custody in his squad car."  Id. at ¶ 21.  Plaintiff contends that Johnson refused to release him even though his wife showed Johnson plaintiff's passport, which bore the name Howard Donovan Williams, "instead indicating to the Plaintiff's wife that the Plaintiff was a drug dealer."  Id. at ¶ 22.

"Plaintiff was taken to the Borough of Sharon Hill Police Station, held overnight and was not informed of the charges against him until the following morning when he was brought before the District Justice Edward Gannon" and "charged with presenting a false identification to law enforcement and disorderly conduct."  Id. at ¶ 26.  Plaintiff was unable to post bail, which was "set at ten percent of $50,000," was taken to Delaware County Prison on July 19, 2011 and held until July 29, 2011, when he was released from custody and placed under house arrest.  Id. at ¶¶ 27-29.  The charges against plaintiff were dismissed following a preliminary hearing before District Justice Gannon on September 20, 2011.  Id. at ¶ 30.

In his complaint, filed on September 21, 2012, plaintiff alleges that by their actions defendants Borough of Sharon Hill and Johnson deprived him of his rights under the First, Fourth and Fourteenth Amendments of the Constitution.  Id. at ¶ 38.  Plaintiff also asserts state law claims for assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress against defendant Johnson.  Id. at ¶ 44.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more

than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement

with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to

relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I.  Federal Civil Rights Claims Against Sharon Hill:  Monell Liability

In Count I of his complaint plaintiff sets forth a claim against Sharon Hill in which he

asserts that the Borough can be held liable for the allegedly unconstitutional acts of its

employees under 48 U.S.C. § 1983.  Plaintiff alleges that "Sharon Hill[ ] has encouraged,

tolerated, ratified, and has been deliberately indifferent to the following patterns, practices and

customs and to the need for more or different training, supervision, investigation or discipline

. . . ," and then sets out a generalized list of subjects including "use of unreasonable force,"

"proper exercise of police powers," and "failure to identify and take remedial or disciplinary

action against police officers who were the subject of prior civilian or internal complaints of

misconduct."  Compl. ¶ 40.  Plaintiff also alleges that "Sharon Hill failed to properly sanction or

discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional

rights of citizens by other Borough of Sharon Hill Police Officers thereby encouraging Sharon

Hill Police . . . to violate the rights of individuals such as Mr. Williams."  Id. ¶ 41.

-4-

"Where a Plaintiff claims that the municipality has not directly inflicted the injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 405 (1997). Liability under Section 1983 may attach to a municipality when an injury is inflicted through the execution of the government's policy or custom. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990) (citations omitted). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (citation, alteration and internal quotation marks omitted). Plaintiff has "the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d. Cir. 2007), citing Andrews, 895 F.2d at 1480; see also Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002), citing Bd. of Cnty. Comm'rs, 520 U.S. at 404 (holding that to survive a motion to dismiss, plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation").

"A municipality's failure to adequately train its officers and employees [also] gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil right and is 'closely related to the ultimate injury.'" Tirado v. Montgomery Cnty., No. 12-00552, 2013 WL 1285487, at *7 (E.D. Pa. Mar. 29, 2013), quoting Kline ex rel Arndt v. Mansfield, 255 F. App'x 624, 629 (3d Cir. 2007) (further citations omitted).

The Court of Appeals "has stated that '[e]stablishing municipal liability on a failure to train claim under § 1983 is difficult." Galarza v. Szalczyk, No. 10-06815, 2012 WL 1080020, at *21 (E.D. Pa. March 30, 2012), citing Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). "Generally, deficient training can only amount to the requisite deliberate indifference 'where the failure to train has caused a pattern of violations.'" Tirado, 2013 WL 1285487, at *7, quoting Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Although plaintiff contends that he has "set forth with particularity allegations that the Defendant, Borough of Sharon Hill has tolerated a pattern and practice of abuse of police powers [and] has been deliberately indifferent to the need for training, supervision, and discipline," Dkt. No. 8-1 at ECF p. 5, citing Compl. ¶¶ 40-41, upon review of the cited allegations, I find that this is not the case. Rather, the allegations set forth in plaintiff's complaint are nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, which, as the Supreme Court held in Iqbal, do not suffice. 556 U.S. at 678. Plaintiff contends that "[d]efendants ignore the different standards that govern motions to dismiss under Rule 12(b)(6) and summary judgment practice under Rule 56." Dkt. No. 8-1 at ECF p. 6. I disagree. Rather, it is plaintiff who ignores that the standards set forth in Conley v. Gibson, 355 U.S. 41 (1975), no longer govern this Court's determination of a motion to dismiss. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (holding that in Twombly, the Supreme Court "disavowed" the "no set of facts" language used in Conley and that "[i]t is clear that the 'no set of facts' language may no longer be used as part of the Rule 12(b)(6) standard"). "Conley described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." Twombly, 550

U.S. at 546. "After <u>Twombly</u>,[2] it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" <u>Phillips</u>, 515 F.3d at 233, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 563 n.8. I find that plaintiff has not alleged facts in his complaint that would "raise a reasonable expectation that discovery will reveal evidence of" the requisite deliberate indifference or government policy or custom. <u>Twombly</u>, 550 U.S. at 555.

While plaintiff may not have access to Officer Johnson's "disciplinary record, internal affairs complaints, training materials, relevant police directives, prior complaint and litigation information, and other discoverable material," Dkt. No. 8-1 at ECF p. 7, to withstand defendants' motion to dismiss, his complaint must allege sufficient facts to allow the Court to conclude that he has a plausible claim warranting the imposition of institutional liability against Sharon Hill. To the extent that plaintiff contends that Sharon Hill's "practices and customs" support his claims, Compl. ¶ 40, he "must identify a custom or policy, and specify what exactly that custom or policy was." <u>McTernan v. City of York, PA</u>, 564 F.3d 636, 658 (3d Cir. 2009). The conclusory allegations in his complaint are not sufficiently specific to meet this obligation. "Plaintiff's failure to train claim also must fail because he alleges no facts to show deliberate indifference. He does not plead any fact to suggest a 'pattern of similar constitutional violations by untrained employees.'" <u>Washington v. City of Phila.</u>, No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012). Nor are the allegations in his complaint sufficiently specific to allow the Court to conclude that Sharon Hill's alleged failure to train was "obviously going to lead to the constitutional violations alleged." <u>Id.</u>

---

[2]     The Court is troubled by plaintiff's failure to even mention the Supreme Court's decisions in <u>Twombly</u> or <u>Iqbal</u>, both of which refined the pleading standard set forth in Rule 8 of the Federal Rules of Procedure.

I will dismiss Count I of plaintiff's complaint as against defendant Sharon Hill with leave to amend to include sufficiently specific allegations setting forth a Borough policy or custom or specific failure to train that led to the alleged violations of his constitutional rights.[3] See Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000) (holding district court should not dismiss a plaintiff's claims "without either granting leave to amend or concluding that any amendment would be futile").

## II.    Conspiracy Claim Against Sharon Hill and Officer Johnson

Defendants' motion to dismiss also asks the Court to dismiss "the federal conspiracy claim against the Borough and Officer Johnson . . . as it is wholly lacking in operative facts as to the entity or Officer Johnson and fails to state a viable cause of action against the Borough as a matter of law as the entity is not a person capable of involvement in a conspiracy." Dkt. No. 6 at ECF p. 4, ¶ 7. The only reference to a conspiracy in the complaint alleges that Johnson "act[ed] in concert and conspiracy with . . . Crosbie . . . ." Compl. ¶ 18. Plaintiff contends that he "has alleged sufficient facts to put Defendants on notice of [his conspiracy] claim and it does not appear beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Dkt. No. 8-1 at 8, citing Conley, 355 U.S. at 44.

Here again plaintiff ignores that the standards set forth in Conley no longer govern this Court's determination of a motion to dismiss. See Phillips, 515 F.3d at 232. "[A] conspiracy claim 'must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.'" Thakar v. Tan, 372 F. App'x 325, 328 (3d Cir. 2010), quoting Capogrosso v. Supreme Ct. of

---

[3]        To the extent that plaintiff is able to amend his  complaint to set forth a viable claim against Sharon Hill under § 1983, he may not reassert his claim against it for punitive damages for the Borough's alleged constitutional violations. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (finding "that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials").

N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).  Plaintiff must allege "some factual basis to support the existence of the elements of a conspiracy:  agreement and concerted action.'" Thakar, 372 F. App'x at 328, quoting Capogrosso, 588 F.3d at 184.  His contentions in his response to the motion to dismiss that Crosbie "reached out to the Borough of Sharon Hill police Department regarding the issuance of an invalid Subpoena and that subsequently Defendant Sean William Johnson participated in the issuance of such invalid subpoena on Plaintiff," Dkt. No. 8-1, at ECF p. 7-8, are not "sufficient to raise a reasonable expectation that discovery will reveal evidence of" agreement and concerted action by Johnson and the Borough. Twombly, 550 U.S. at 556.  Accordingly, I will dismiss plaintiff's allegations of a conspiracy with leave to amend to include specific allegations to support a claim that defendants conspired to issue an invalid subpoena on plaintiff.  See Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000).

III.    **Other Claims Against Officer Johnson**

   A.    **First Amendment**

   Defendants argue that plaintiff's First Amendment claim should be dismissed because "[p]laintiff has not demonstrated that any alleged cover up impeded his right of access to the judicial process."  Dkt. No. 6 at ECF p. 15.  They assert that "[t]here is no allegation that Officer Johnson interfered with Plaintiff's ability to defend himself in court or deprived him of any access to the Court system."  Id.  Plaintiff counters by claiming that his complaint sets forth a claim for First Amendment retaliation.  He asserts that there are sufficient grounds to support his claim that defendants violated his rights under the First Amendment where "[p]laintiff's arrest for disorderly conduct and providing false identification to authorities were committed, at least in part, in response to or in retaliation for Plaintiff's protest of his treatment by Defendant officer." Dkt. No. 8-1 at ECF p. 9.

"Retaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." White v. Napoleon, 897 F.2d 103, 111–12 (3d Cir. 1990). In order to state a claim for First Amendment retaliation under Section 1983, plaintiff must, however, allege "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). I find that the allegations in plaintiff's complaint are insufficient to state a claim for retaliation under the First Amendment.

His complaint does not explicitly set forth a claim that defendants' retaliated against him in violation of his rights under the First Amendment. Nowhere in the complaint does plaintiff even use the term "retaliation." Instead, plaintiff only alleges generally that he was "deprived of his right to be free from unreasonable and excessive force, and unlawful search and seizure, unlawful arrest, malicious prosecution, to be secure in his person and property and to due process of law" and that "[a]s a result [he] suffered and continues to suffer harm in violation of his rights under the laws and Constitution of the United States, in particular, the First . . . Amendment[ ] thereof, and 42 U.S.C. § 1983." Compl. ¶ 38. He contends that "Sharon Hill, has encouraged, tolerated ratified and has been deliberately indifferent to . . . violations of citizens' free speech rights, particularly in connection with perceived challenges to police authority." Compl. ¶ 40(b). It is unclear, however, from plaintiff's generalized and conclusory allegations which of his actions would constitute a protected challenge to police authority. Without more, plaintiff's allegations are not sufficiently specific to constitute "a short and plain statement of [a] claim showing that [plaintiff] is entitled to relief" from retaliation under the First Amendment. Fed. R.

Civ. P. 8(a)(2).   Accordingly, I will dismiss plaintiff's First Amendment claim against Officer Johnson.[4]

### B.       Fourth Amendment Excessive Force

In his complaint, plaintiff alleges, inter alia, that he "was deprived of his right to be free from unreasonable and excessive force, and unlawful search and seizure, unlawful arrest, malicious prosecution, to be secure in his person and property, and to due process of law.[5] Compl. ¶ 38.  In their motion, defendants move only to dismiss plaintiff's claim that Johnson used excessive force against him in violation of the Fourth Amendment.  Dkt. No. 6 at ECF p. 16.  They do not seek to dismiss plaintiff's other Fourth Amendment claims against Johnson, including plaintiff's claims for unlawful arrest and malicious prosecution.  See id. at ECF p. 1, ¶ 2; see also id. at ECF p. 16.

Defendants argue that I should dismiss plaintiff's excessive force claim because "there is no claim that there was actual excessive force used, and a lack of probable cause to make an arrest in itself does not establish that the force used in making the arrest was excessive."  Id. at ECF p. 16, citing Snell v. Borough of York, 564 F.3d 659, 672 (3d Cir. 2009).  I agree.

---

[4]        If he is able to amend his complaint to warrant the imposition of municipal liability against Sharon Hill, plaintiff must also establish the alleged violation of his rights under the First Amendment to proceed with a First Amendment claim against Sharon Hill.  See Thomas v. Arias, No. 06-291, 2007 WL 210087, at *3 (E.D. Pa. Jan. 23, 2007), citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (holding that to state a cause of action under section 1983, plaintiff must show both that defendants acted under color of state law, and that their actions deprived him of right secured by the United States Constitution or federal statutes).

[5]        Defendants argue that plaintiff's Fourteenth Amendment claim should be dismissed "[t]o the extent that Plaintiff is attempting to assert a procedural or substantive due process claim based upon his arrest and prosecution [as] such claims would be subsumed by [his] Fourth Amendment claim alleging false arrest, false imprisonment and any cognizable claim of excessive force."  Dkt. No. 6 at ECF p. 14.  In his response to defendant's motion to dismiss, plaintiff concedes that he "is not asking the Court to recognize an independent substantive due process right through the Fourteenth Amendment."  Dkt. No. 8-1 at ECF p. 1.  Instead, he contends that his complaint "alleges a violation of his Fourth Amendment rights as incorporated to the states through the Fourteenth Amendment."  Id.

"[M]erely because a person has been falsely arrested does not mean that excessive force has been used." Robinson v. Fetterman, 378 F. Supp. 2d 534, 544 (E.D. Pa. 2005); see also Bodine v. Warwick, 72 F.3d 393, 400 n.10 (3d Cir. 1995) ("Officers who detain a suspect unlawfully should be liable for the harm proximately caused by their tortious detention, but this will not necessarily include all harm resulting from the otherwise reasonable use of force to carry out the detention."); Szalabawka v. Russo, No. 09- 88, 2011 WL 7776786, at *13 (W.D. Pa. Sept. 28, 2011) ("[C]laims of excessive force and false arrest implicate different aspects of the Fourth Amendment's 'reasonableness' requirement: the probable cause requirement concerns the justification for a seizure while the proscription against excessive force concerns the manner in which the seizure is carried out."). Plaintiff's complaint does not include any allegations that the force used during his arrest was unnecessary or excessive and thus does not contain "'sufficient factual matter' to show that [his excessive force] claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. I will dismiss plaintiff's Fourth Amendment excessive force claim against Officer Johnson.[6]

## C. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "ensure[s] that before [officers] are subjected to suit, [they] are on notice their conduct is unlawful."

---

[6]     If plaintiff is able to amend his complaint to warrant the imposition of municipal liability against Sharon Hill, to proceed with a Fourth Amendment excessive force claim against Sharon Hill, he must also allege sufficient facts to establish the alleged underlying constitutional violation. See Thomas, 2007 WL 210087, at *3, citing Kost, 1 F.3d at 184 (holding that to state a cause of action under section 1983, plaintiff must show that defendants' actions deprived him of right secured by the United States Constitution or federal statutes).

Saucier v. Katz, 533 U.S. 194, 206 (2001).  It is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006).  Qualified immunity "applies regardless of whether [an officer's] conduct result[ed] from a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact."  Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010).

While defendants do not raise the issue of qualified immunity in their motion to dismiss, the Court may address this defense sua sponte, when appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming sua sponte recommendation of qualified immunity by U.S. magistrate judge).  Qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial" or a defendant is compelled to undergo other burdens of litigation.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original).  Thus it is important to resolve questions of immunity "at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam) (citations omitted).

That being said, although Johnson may ultimately be eligible for qualified immunity from certain of plaintiff's claims, I decline to make that determination at this stage of the proceedings.  First, Johnson's misidentification of plaintiff as Clarence Williams was arguably not reasonable in light of the facts currently alleged, including plaintiff's claim that he presented Johnson with his passport, which bore the name Howard Donovan Williams.[7]  Compl. ¶ 22.  The Court is thus unable to determine from the complaint that Johnson had probable cause to arrest plaintiff such that dismissal of plaintiff's Fourth Amendment claims against Johnson is warranted on qualified

---

[7]    If these facts prove to be true, plaintiff may have a valid claim that Johnson lacked probable cause to arrest him.

immunity grounds.  Second, with respect to plaintiff's claims under the First Amendment, the

Court of Appeals has held that an inquiry into officials' subjective beliefs and motivations in a

First Amendment retaliation case "cannot properly be resolved on the face of the pleadings, but

rather can be resolved only after the plaintiff has had an opportunity to adduce evidence in

support of the allegations that the true motive for the conduct was retaliation rather than the

legitimate reason proffered by the defendants." Larsen v. Senate of Commw. of Pa., 154 F.3d

82, 94 (3d Cir. 1998).

### D.  State Law Claims Against Officer Johnson[8]

#### 1.  Assault and Battery

Under Pennsylvania law, '[a]ssault is an intentional attempt by force to do an injury to

the person of another, and a battery is committed whenever the violence menaced in an assault is

actually done, though in ever so small a degree, upon a person.'" Renk v. Borough of Pittsburgh,

641 A.2d 289, 293 (Pa. 1994), quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct.

1950).  When making an arrest, a police officer is allowed to use a reasonable amount of force.

Renk, 641 A.2d at 293.  But an officer will be liable for assault and battery when the "force used

in making an arrest is unnecessary or excessive." Id.  As with his claim for excessive force

under the Fourth Amendment, I find that plaintiff has not sufficiently alleged that the amount of

force utilized by Officer Johnson in the course of plaintiff's arrest was unreasonable under the

facts set forth in his complaint.  I will dismiss his assault and battery claims with leave to amend.

#### 2.  Intentional Infliction of Emotional Distress

"The tort of intentional infliction of emotional distress requires a showing that the

---

[8]        The supplemental state law claims alleged in plaintiff's second cause of action are alleged to arise only out of "[t]he acts and conduct of the individual Defendants . . . ."  Compl. ¶ 46.

defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bound of decency and to be regarded as atrocious and intolerable in a civilized society.'" McGreevey v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005), quoting Restatement (Second) of Torts § 46.  Plaintiff alleges that Officer Johnson arrested him despite his protest that he was not the suspected drug dealer named in the child custody subpoena and despite his wife's attempt to provide Johnson with plaintiff's passport.  Compl. ¶¶ 20, 22.  Even assuming these allegations to be true, as I must, I find that plaintiff has not pled facts sufficient to demonstrate that Johnson's arrest of plaintiff based on the information that Crosbie provided to Johnson was so extreme and outrageous as to permit recovery.  See Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (holding that, "[a]t most, defendants miscalculated the propriety of their law enforcement activities," and that allegedly improper arrests by defendant officers were not sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress).

Further, I find that plaintiff's conclusory allegations that he "suffered and continues to suffer physical and psychological harm, pain, and suffering, some or all of which may be permanent," Compl. ¶ 34, and that he "sustained pain, suffering, fear anxiety, embarrassment . . . and emotional trauma," id. ¶ 36, are not sufficient to establish a plausible claim that he will be able to obtain the requisite medical evidence to support his claim in discovery.  See Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987).  ("[A]t the very least, existence of the alleged emotional distress must be supported by competent medical evidence.").  "Plaintiff will . . . eventually need to support this claim with competent medical evidence of the alleged emotional distress."  Hall v. Raech, No. 08-5020, 2009 WL 811503, at *7 (E.D. Pa. Mar. 25, 2009).

Accordingly, I will grant defendants' motion to dismiss plaintiff's claim for intentional infliction of emotional distress with leave to amend.

### E.    Punitive Damages Claims Against Johnson

Defendants also ask the Court to dismiss plaintiff's claims for punitive damages against Officer Johnson in his official capacity.  In his response to defendants' motion to dismiss, plaintiff asserts that he is pursuing a punitive damage claim against Johnson "in his individual capacity." Dkt. No. 8-1 at ECF p. 11.  As plaintiff can only seek monetary damages from Johnson in his individual capacity, I will grant defendant's motion to dismiss the punitive damages claim against Johnson to the extent that it can be read as seeking punitive damages against Johnson in his official capacity.[9]  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself."); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (finding "that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials"); Gregory v. Chehi, 843 F.2d 111, 119–20 (3d Cir.1988) ("Punitive damages cannot be recovered from defendants in their official capacities.").

An appropriate Order follows.

---

[9]      The caption of plaintiff's complaint identifies Johnson as a party "[i]ndividually and as police officer and official for the Borough of Sharon Hill."  See Compl. The body of his complaint, however, asserts only that Johnson "is being sued in his individual capacity."  Compl. ¶ 4.