IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD DONOVAN WILLIAMS | : | CIVIL ACTION |
| | : | No. 12-5395 |
| v. | : | |
| | : | |
| BOROUGH OF SHARON HILL, et al. | : | |

O'NEILL, J.                                                                                                    December 5, 2013

## MEMORANDUM

Now before me is a motion to dismiss plaintiff Howard Donovan Williams' amended complaint by defendants Borough of Sharon Hill and Sean William Johnson, Dkt. No. 17, and plaintiff Howard Donovan Williams's response thereto. Dkt. No. 18. For the reasons that follow, I will deny in part and grant in part the motion to dismiss.

## BACKGROUND

Plaintiff's amended complaint alleges the following facts. His wife, Chanane Williams, was involved in a child custody dispute with her ex-spouse, Elliott Brown, III. Compl. ¶¶ 7-9. At approximately 6:18 p.m. on July 18, 2011, defendant Allastair Crosbie,[1] who had been retained by Brown's attorney, appeared with Elliott Brown III and Chanane Williams' son Elliott at plaintiff's home at 90 Kenny Avenue, Sharon Hill, Pennsylvania to serve a subpoena for a deposition in the child custody matter. Id. at ¶¶ 10, 14-16. The subpoena was directed to Clarence P. Williams, not Howard Donovan Williams. Id. at ¶¶ 9-10. No one by the name of Clarence P. Williams resided at 90 Kenney Avenue. Id. at ¶ 11. Plaintiff alleges that "there were no lawful grounds to believe that 'Clarence P. Williams' was the same person as Plaintiff, Howard Donovan Williams" and that "[o]ther than the address information contained on the

---

[1] Crosbie filed an answer to the amended complaint on October 3, 2013.

Subpoena to Attend and Testify, there was no legal basis for believing that a 'Clarence P. Williams' would be found at Plaintiff's residence" on the evening in question. Id. at ¶¶ 13-14.

Defendant Officer Sean William Johnson, of the Borough of Sharon Hill Police Department, was parked outside of plaintiff's house when Crosbie appeared with the subpoena. Id. at ¶ 19. Plaintiff alleges that before attempting to serve the subpoena Crosbie "contacted the Borough of Sharon Hill Police Department, specifically Defendant, Officer Johnson, and represented that the party [on] whom he was serving the subpoena, 'Clarence P. Williams,' was a dangerous drug dealer." Id. at ¶ 12. He claims that Crosbie "requested police presence at the time he served such subpoena . . . ." Id.

On July 18, 2011, plaintiff claims he heard a knock at the front door of 90 Kenney Avenue. Id. at ¶ 15. He claims he answered the door and "found Elliott Brown, III and Chanane Williams' son Elliott, at the door. Chanane William's [sic] son, Elliott, walked inside the home and went upstairs to see his mother. Elliott Brown, III remained at the door." Id. at ¶ 16. Plaintiff asserts that Crosbie then "ran up the front steps to the front door," approaching plaintiff with the subpoena for Clarence P. Williams. Id. at ¶ 17. Then, plaintiff claims "Crosbie[ ] showed to Plaintiff a badge and asserted his authority to act under color of law as a representative from the Bucks County District Attorney's Office." Id. at ¶ 18. Plaintiff alleges that Crosbie then "called to Defendant Officer Johnson, who was parked outside of Plaintiff's home" and "represented to . . . Johnson that Plaintiff was 'Clarence P. Williams.'" Id. at ¶ 19. Plaintiff alleges that Johnson "without cause or justification, approached Plaintiff and directed Plaintiff to step outside on his porch and provide Plaintiff's name and identification." Id. at ¶ 20. He claims that "Johnson asserted his authority to act under the color of law." Id.

Plaintiff asserts that he "stepped out onto his porch and suggested that Defendant, Officer

Johnson speak with the attorney Plaintiff had retained in a separate immigration matter" but that "Johnson indicated that he did not wish to speak to Plaintiff's attorney, only to the Plaintiff." Id. at ¶¶ 21-22.  Plaintiff claims he told Johnson "that his name was Howard Donovan Williams and not 'Clarence P. Williams.'"  Id. at ¶ 23.  Johnson allegedly began interrogating plaintiff and directed him "to sit on the floor of his front porch in full view of his neighbors" while plaintiff "verbally protested" Johnson's direction and "indicated that he did not wish to sit on his front porch."  Id. at ¶ 26.  He claims that "Johnson made it clear to Plaintiff that if Plaintiff did not sit on the front porch, he would make Plaintiff sit on the front porch."  Id. at ¶ 27.  Plaintiff alleges that he sat "on the front porch, but continued to protest his interrogation."  Id. at ¶ 28.  He also claims that while Johnson was interrogating him, "Crosbie pointed his finger in Plaintiff's face and attempted to provoke Plaintiff by claiming that Plaintiff was a 'bad guy.'"  Id. at ¶ 24.

Plaintiff asserts that he told Johnson that proof of his identity was "in his room on the second floor of his home and asked if he could go inside and get his identification or have his wife get the identification."  Id. at ¶ 29.  He claims that Johnson refused to allow him inside and told him that "his wife did not have anything to do with the matter . . . ."  Id. at ¶ 30.  Johnson allegedly "thereafter asked Plaintiff if he had ever been locked up before" and "Plaintiff responded that he had been arrested in the past."  Id. at ¶ 33.  "Johnson asked Plaintiff under what name was Plaintiff . . . arrested and why he had been arrested."  Id. at ¶ 33.  Plaintiff claims he told Johnson he "had been charged several years earlier with the offense of possession of marijuana under the name of Howard Smith."  Id. at 34.  He alleges that in 2006, he was charged with possession of marijuana and the charges were dismissed.  Id. at ¶ 35.  Plaintiff claims he had no prior convictions.  Id. at ¶ 36.

Plaintiff asserts that Johnson then "directed his assisting officer to handcuff Plaintiff."

Id. at ¶ 37.  He avers that while handcuffed and being placed in a squad car, "in full view of his neighbors," his wife came outside with his passport, which bore the name Howard Donovan Williams.  Id. at ¶ 38.  He alleges that "in the absence of any probable cause to believe that Plaintiff was any other person, including, "Clarence P. Williams," Defendant, Officer Johnson refused to release Plaintiff, instead indicating to the Plaintiff's wife that the Plaintiff was a drug dealer."  Id. at 39.

"Plaintiff was taken to the Borough of Sharon Hill Police Station, held overnight and was not informed of the charges against him until the following morning when he was brought before the District Justice Edward Gannon" and "charged with presenting a false identification to law enforcement and disorderly conduct."  Id. at ¶ 40.  His amended complaint alleges that "Johnson's conduct in arresting Plaintiff and charging him with presenting false identification to law enforcement and disorderly conduct violated well developed and clearly established law."  Id. at ¶ 41.  Further, he alleges that at the time of his arrest, "Johnson lacked knowledge or reasonably trustworthy information of facts and circumstances to believe that plaintiff had committed" the crimes with which he was charged, having

> failed to conduct a reasonably thorough investigation by corroborating:  (a) the information provided to him by Defendant, Crosbie; (b) the identity of Plaintiff; (c) the identity of "Clarence P. Williams"; (d) that "Clarence P. Williams could be found at Plaintiff's address; (e) that Plaintiff was "Clarence P. Williams["]; and (f) that Plaintiff had presented false identification to Defendant Officer Johnson.

Id. at ¶¶ 42-43.  Plaintiff claims that Johnson "ignored:  (a) the statements of Plaintiff regarding his identity; (b) the statements of Plaintiff's spouse regarding Plaintiff's identity; and (c) Plaintiff's passport indicating that Plaintiff was indeed 'Howard Donovan Williams' and not 'Clarence P. Williams.'"  Id. at ¶ 44.  He asserts that "[a] substantial and motivating factor in

Defendant, Officer Johnson's decision to arrest Plaintiff was Defendant Officer Johnson's ill will directed toward Plaintiff as a result of Plaintiff's verbal protest of his interrogation by Defendant, Officer Johnson . . ." and that plaintiff was "exercising his protected First Amendment right to verbally oppose the conduct of Defendant, Officer Johnson in interrogating Plaintiff on his front porch and prohibiting Plaintiff from going into his home to retrieve proof of his identity." Id. at ¶¶ 45, 47.  He also alleges that Johnson lacked any reason to believe that Plaintiff

> intended to cause public inconvenience annoyance or alarm, or recklessly created a risk thereof by (a) engaging in fighting or threatening, or in violent or tumultuous behavior; (b) making unreasonable noise; (c) using obscene language, or making an obscene gesture; or (d) creating a hazardous or physically offensive condition by any act which serves no legitimate purpose.

Id. at ¶ 45.  Plaintiff asserts that "Johnson, in his individual capacity, acted willfully, deliberately, maliciously or with reckless disregard of Plaintiff's constitutional and statutory rights." Id. at ¶ 55.

Plaintiff was unable to post bail, which was "set at ten percent of $50,000," was taken to Delaware County Prison on July 19, 2011 and held until July 29, 2011, when he was released from custody and placed under house arrest. Id. at ¶¶ 48-49, 51.  The charges against plaintiff were dismissed following a preliminary hearing before District Justice Gannon on September 20, 2011. Id. at ¶ 52.  He asserts that he "was required to retain and pay for a criminal defense attorney" and claims that as a result of defendants' actions, he "suffered and continues to suffer psychological harm, pain and suffering, some or all of which may be permanent, as well as financial losses including the cost of retaining criminal defense counsel." Id. at ¶¶ 50, 56.

In his amended complaint, filed on September 20, 2013, plaintiff alleges that by their actions defendants Borough of Sharon Hill and Johnson deprived him of his rights under the First, Fourth and Fourteenth Amendments of the Constitution. Id. at ¶ 60.  Plaintiff also asserts

against Johnson state law claims for false arrest, false imprisonment and malicious prosecution and against Crosbie state law claims for abuse of process, assault, battery, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.  Id. at ¶¶ 64, 66.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded

>facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

### I. Borough of Sharon Hill

Although plaintiff's amended complaint again names the Borough of Sharon Hill as a defendant, he asserts in his response to the instant motion to dismiss that he "is not pursuing any claims against the Defendant, Borough of Sharon Hill."  Dkt. No. 18 at ECF p. 4.  Accordingly, I will dismiss plaintiff's claims against the Borough.

### II. First Amendment Claim Against Johnson

Moving defendants argue that "there is no factual predicate to support a First Amendment claim in this case."  Dkt. No. 17 at ECF p. 9.  In response, plaintiff argues that he "has set for[th] factual material demonstrating that Defendant, Officer Johnson falsely arrested Plaintiff in retaliation for Plaintiff's lawfully challenging the manner in which Defendant Officer Johnson interrogated the plaintiff."  Dkt. No. 18 at ECF p. 6.  I find that plaintiff has sufficiently alleged that his arrest constituted retaliation in violation of his First Amendment rights to permit his amended First Amendment claim to withstand the motion to dismiss.

"Retaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  In order to state a claim for First Amendment retaliation under Section 1983, plaintiff must allege "(1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  "[I]n a case in which the plaintiff is alleging a claim of First Amendment retaliation in the form of an arrest and prosecution, the plaintiff must also plead and prove the absence of probable cause supporting the prosecution." Taylor v. JFC Staffing Assoc., 690 F. Supp. 2d 357, 375-77 (M.D. Pa. 2009), citing Hartman v. Moore, 547 U.S. 250, 258 (2006); see also Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (same).

Plaintiff's assertions that he "verbally protested the demands of Defendant, Officer Johnson and indicated that he did not wish to sit on his front porch," Dkt No. 15 at ¶ 26, and that he "protest[ed] his interrogation," id. at ¶ 28, sufficiently allege that he engaged in protected speech.  See, e.g. City of Houston v. Hill, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); Norwell v. City of Cincinnati, Oh., 414 U.S. 14, 16 (1973) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.").  Further, plaintiff's alleged arrest constitutes a sufficient allegation of a retaliatory action that would sufficiently deter a person from exercising his First Amendment rights.  See, e.g., O'Malley v. Lukowich, No. 08-0680, 2008 WL 4861477, at *8 (M.D. Pa. Nov. 7, 2008) ("The initiation of criminal charges and subsequent arrest constitute

conduct that would deter a person of ordinary firmness from exercising his constitutional rights."). Plaintiff has also alleged that Johnson lacked probable cause to support his arrest and prosecution for the crimes of presenting false identification to law enforcement and disorderly conduct. See Dkt. No. 15 at ¶¶ 39, 42-44, 46. Viewing the allegations in the amended complaint in the light most favorable to plaintiff, it is plausible that his alleged verbal protestations were the but for cause of his arrest. I will deny moving defendants' motion to dismiss plaintiff's First Amendment claim against Officer Johnson.

## II.     Fourteenth Amendment

I will, however, dismiss plaintiff's claims under the Fourteenth Amendment. Plaintiff contends that his "unlawful arrest and subsequent detention . . . amounted to a deprivation of liberty without due process of law as guaranteed by the Fourteenth Amendment." Dkt. No. 18 at ECF p. 9. He concedes, however, that he "is not asking the Court to recognize an independent substantive due process right under the Fourteenth Amendment." Dkt. No. 18 at ECF p. 8. Instead, he asserts that he "is asking the Court to enforce procedural rights guaranteed by the Fourteenth Amendment with respect to substantive rights guaranteed by the Fourth Amendment." Id.

To state a claim under § 1983 for deprivation of procedural due process, plaintiff must allege that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). Plaintiff's amended complaint alleges that the charges against him were dismissed following a preliminary hearing, Dkt. No. 15 at ¶ 52, and does not allege how the available procedures failed to afford him due process of law. Further, plaintiff's procedural due process

claim plainly arises out of the alleged violations of his Fourth Amendment rights to be free from false arrest and malicious prosecution. "[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013), quoting Berg v. Cnty. of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000) ("although not all actions by police officers are governed by the Fourth Amendment, . . . the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis"); see also Zabresky v. Von Schmeling, No. 12-0020, 2013 WL 315718, at *6 (M.D. Pa. Jan. 28, 2013), quoting Swedron v. Borough, No. 08-1095, 2008 WL 5051399, at *6 (W.D. Pa. Nov. 21, 2008) ("'[A]s the gravamen of his lawsuit is so clearly premised on a First and/or Fourth Amendment violation based upon his alleged malicious prosecution and arrest without probable cause, the Court will dismiss the procedural due process claim along with the substantive due process claim.'"). Accordingly, I will dismiss plaintiff's Fourteenth Amendment claims.

    An appropriate Order follows.